1
2

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

3
4
5   ERIC ROBINSON,                  )
6   an individual,                  )          Case No. _____
7                                   )
8          *Plaintiff,*             )          **COMPLAINT**
9                                   )
10         v.                       )          **[JURY TRIAL DEMANDED]**
11                                  )
12  META PLATFORMS, INC.,           )
13                                  )
14         *Defendant.*             )
15  _____ )
16

17  COMES NOW Plaintiff, Eric Robinson, by and through his attorneys, and alleges as follows:

18                          **<u>INTRODUCTION</u>**

19  1.   Plaintiff Eric Robinson seeks relief from Defendant Meta Platforms Inc.'s pattern of

20       discriminatory and illegal behavior against employees who hold sincere religious

21       objections to Defendant's COVID-19 vaccination mandate.

22  2.   Meta imposed an unnecessary, draconian vaccine mandate that violated long-held

23       principles of religious freedoms, informed consent, and bodily autonomy.

COMPLAINT - 1

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

3. Defendant's unlawful actions left Plaintiff with the impossible choice of suffering a physical assault and uninvited invasion of his body by receiving the experimental and harmful mRNA COVID-19 vaccine, at the expense of his religious beliefs, bodily autonomy, medical privacy, and his health, or losing his livelihoods.

4. This Faustian bargain is no bargain at all and is precisely what is forbidden by federal and Washington civil rights law.

5. Defendant's actions violated federal and Washington law by mandating an experimental medical treatment, retaliating against employees who engaged in protected activity, failing to provide reasonable accommodations for exemptions, and violating the sacred rights of privacy and bodily integrity.

6. Plaintiffs respectfully implore this Court to order that Defendant comply with the laws protecting the rights of the citizens of Washington against precisely such catch-22 "choices."

### PARTIES

7. Plaintiff Eric Robinson ("Robinson" or "Plaintiff") was employed as a Deployment Project Manager at Meta's facility in Seattle, Washington. Robinson is a resident of King County, Washington. Robinson was subjected to religious discrimination and retaliation due to Defendant's COVID-19 vaccine mandate.

8. Meta Platforms, Inc. ("Meta" or "Defendant") is a technology company which owns and operates several social media platforms and services. Meta is headquartered in Menlo Park, California.

### JURISDICTION AND VENUE

COMPLAINT - 2

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

9. This Court has original jurisdiction over the subject matter of this dispute pursuant to 28 United States Code ("U.S.C.") Section 1331. Plaintiff seeks remedies under Title VII of the Civil Rights Act pursuant to 42 U.S.C. § 2000e et seq.

10. This Court has supplemental jurisdiction over the state claims raised in this matter pursuant to 28 ("U.S.C.") Section 1367. Plaintiff seeks remedies under the Washington Law Against Discrimination.

11. Venue is proper in this District under 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

12. An actual and justiciable controversy exists between Plaintiff and Defendant.

## FACTS AND BACKGROUND

**Meta's Discriminatory Treatment of Plaintiff**

13. Mr. Robinson was employed as a Deployment Project Manager at Meta from May 2019 to July 2022 at Meta's Seattle, Washington location.

14. On July 28, 2021, Meta announced it was instituting a vaccination requirement for all US employees.

15. On August 26, 2021, Meta announced that beginning on November 1, 2021, all US offices will require employees to be vaccinated in order to gain entry. Additionally, "In the US, people will need to return [to office] in January 2022 unless they've opted into a remote work option."

16. Per Meta's policies and Governor Inslee's Proclamation nos. 21-14.2 and 21-14.5 carving out exemptions to vaccination mandates, employees who held objections to the vaccine on medical or religious grounds were entitled to request an accommodation to the mandate.

COMPLAINT - 3

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

17.  Mr. Robinson holds sincere religious beliefs that prevented him from complying with Meta's mandated vaccine policy.

18. Plaintiff submitted a religious accommodation and exemption request on October 28, 2021. *See* Exhibit A.

19. Along with other employees, Mr. Robinson had been successfully working from home as part of Meta's policy targeted at reducing COVID-19 exposure in the workplace.

20.  In his accommodation request, Mr. Robinson informed Meta that the existing available COVID-19 vaccines all have been developed and/or tested using aborted fetal cells.

21.  Mr. Robinson is a member of the Christian faith. As part of his religion, he believes that human life begins at conception and all humans are created in the image of God. He believes that the elected termination of an unborn child is a sin. As such, receiving a vaccine developed or tested with a product derived from an abortion is in direct conflict with Meta's vaccination policy.

22.  Mr. Robinson offered two alternative accommodations in his request: 1) weekly COVID-19 testing and wearing a Defendant-approved facial covering while working in any offices, or 2) continuing to work remotely until vaccination is no longer a mandatory requirement. *See* Exhibit A.

23.  Along with his request, Mr. Robinson submitted a signed letter from Leif Foged attesting to his religious beliefs.

24.  Meta acknowledged and accepted his accommodation request on November 12, 2021. However, they simultaneously rejected his proposed accommodations, even though the proposed accommodations were consistent with EEOC guidance.

COMPLAINT - 4

25. Meta refused to provide any reasonable accommodation to Mr. Robinson's sincere religious beliefs.

26. From October 28, 2021 - June 9, 2023, Mr. Robinson's primary communication with Meta was via Kendra Einhorn, Meta's Head of Global Accommodations.

27. On November 12, 2021, Ms. Einhorn informed Mr. Robinson, after he submitted his request for accommodation, that he will be required to return to the office by December 31, 2021.

28. Ms. Einhorn initially insisted that the only outcome for Mr. Robinson would be termination by December 31, 2021 due to his religious exemption.

29. Meta removed Mr. Robinson from his position and placed him on a probationary period during which time he would go through a guided job search (GJS) to find another Meta position that did not require the vaccine.

30. Mr. Robinson began the GJS process, and it became apparent that it was a deceitful process intended to eliminate Mr. Robinson's employment and that Meta never intended to place Mr. Robinson in another position.

31. Ms. Einhorn repeatedly made statements to Mr. Robinson that he was unqualified for every position he expressed interest in, although he was never properly evaluated for any of these positions. Furthermore, positions that were originally listed as "Remote - US" were reclassified to "In Office Only" immediately following Mr. Robinson's request for consideration.

32. On December 7, 2021, Meta altered its company policy to allow most employees to delay their return to working in-office until July 5, 2021 under the "Office Deferral Program" ("ODP").

COMPLAINT - 5

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

33.  Mr. Robinson submitted his ODP request on January 17, 2021 and Meta approved it.

34. On January 18, 2022, Mr. Robinson informed Ms. Einhorn that the GJS process was not being conducted in good faith and that he wanted to be removed from the program and return to his original position. Ms. Einhorn attempted to argue that was not possible. She further argued that Mr. Robinson was not eligible for the ODP approval despite the fact Meta had approved the request the day before and no exception existed to deny Mr. Robinson from participating in the ODP.

35. On January 26, 2022, Mr. Robinson met virtually with Ms. Einhorn. Ms. Einhorn stated that Mr. Robinson would "never be able to return" to his position with Meta because he had voluntarily vacated his role when he agreed to participate in the GJS. However, Mr. Robinson had been forced to leave his position due to his submission of an accommodation request.

36. Ms. Einhorn's statements were overheard by Leif Foged, a Meta software engineer. Mr. Foged reported Ms. Einhorn's statements to Meta, as a whistleblower of unfair employment practices. Mr. Foged's whistleblower complaint resulted in a Meta workplace investigation that concluded Ms. Einhorn had made the alleged, illegal statements to Mr. Robinson.

37. Through his communications with Ms. Einhorn, Mr. Robinson repeatedly articulated that he was not voluntarily resigning from his position with Meta.

38. Mr. Robinson expressed that had he not submitted his religious accommodation request, Meta would never have removed him from his position in December 2021. In essence, Mr. Robinson was punished for submitting his religious exemption from vaccination.

COMPLAINT - 6

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

39. Meta allowed similarly situated employees in the same or similar positions to continue working from home without making the same demands made of Mr. Robinson.

40. Mr. Robinson made several demands that he be returned to permanent status as a Deployment Project manager, which were denied.

41. On March 7, 2022, Meta abruptly changed course and claimed that Mr. Robinson's team wanted him to return to his position.

42. On June 9, 2022, Ms. Einhorn's employment with Meta was terminated and Brandy Hooper contacted Mr. Robinson regarding his employment. She stated that he must be fully vaccinated for COVID-19 or face termination from employment on July 5, 2022.

43. On June 9, 2022, Brandy Hooper contact Mr. Robinson by email and informed him that he must be vaccinated for COVID-19 by July 5, 2022 otherwise he would be terminated.

44. Mr. Robinson again clearly articulated that he would not be resigning and that if he was not permitted to enter the Meta after July 5, 2022, he would interpret that as being terminated on the basis of his religious beliefs.

45.  Despite this, Mr. Robinson was officially terminated on July 5, 2022.

46.   Mr. Robinson was an exemplary employee. From 2019-2021, he continuously received "Exceeds Expectations" on all performance assessments.

47. In June 2022, Mr. Robinson tested positive for SARS-CoV-2 antibodies, meaning he was protected by natural immunity, which is far more robust and long-lasting than vaccine-induced immunity.

48. Mr. Robinson had been successfully performing his employment duties for two years prior to his termination in a work from home environment. All of his duties could have been satisfactorily performed from home on a continuous basis.

COMPLAINT - 7

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

49.  On July 1, 2022, Plaintiff filed a complaint with the U.S. Equal Employment

Opportunity Commission ("EEOC"), dual-filed with the Washington State Human

Rights Commission, alleging religious discrimination and retaliation. *See* Exhibit B.

50. Plaintiff received a Notice of Right to Sue from the EEOC on December 21, 2022. *See*

Exhibit C. This Complaint has followed.

**COVID-19 Vaccines Manufacturing Process**

51.  Presently, all COVID-19 vaccines have made use either in production or testing of fetal

cell lines developed from tissues derived from aborted fetuses (see excerpt below).[1]



**Los Angeles County**
**COVID-19 VACCINE AND FETAL CELL LINES**

In various stages of vaccine development and manufacturing, some of the COVID-19 vaccines used cells originally isolated from fetal tissue (often referred to as fetal cells), some of which were originally derived from an aborted fetus. The use of fetal cell lines is a very sensitive and important topic within some faith communities and among individuals with concerns about the ethics of using materials derived in this way.

52.  For example, the Johnson & Johnson vaccines used fetal cell cultures, specifically

PER.C6, a retinal cell line that was isolated from a terminated fetus in 1985.[2]

53.  In an interview with WREG-TV, Dr. Steve Threlkeld, president of the medical staff at

Baptist Hospital in Memphis, Tennessee, acknowledged fetal cell lines used to produce

---

[1] *See,* Los Angeles County Public Health, *COVID-19 Vaccine and Fetal Cell Lines*, http://publichealth.lacounty.gov/media/Coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf (last accessed August 26, 2021)

[2] Are the vaccines made with fetal cells, Institute for Clinical Systems Improvement, https://www.icsi.org/covid-19-vaccine-faq/are-the-mrna-vaccines-made-with-fetal-cells/ (last accessed August 26, 2021), see also, Tennessee Department of Health, Fact v. Fiction: Johnson & Johnson Vaccine(2021) available at https://covid19.tn.gov/stay-informed/blogs/fact-v-fiction-johnson-johnson-vaccine/ (last visited Sept. 27, 2021) (acknowledging the Johnson & Johnson vaccine was developed from a fetal cell line).

COMPLAINT - 8

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

or test the Johnson & Johnson COVID-19 vaccines "were actually recovered from an aborted fetus in the 70s or 80s and there are several of these cell lines."[3]

54.   The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine used the PER.C6 fetal cell line, which "is a retinal cell line that was isolated from a terminated fetus in 1985."[4]

55.   As for the EUA-Pfizer and Moderna COVID-19 vaccines, fetal cell line HEK 293 was used during the research and development phase.[5] All HEK 293 cells are descended from tissue taken in 1973 from either an abortion or miscarriage[6] that took place in the Netherlands.[7]

56.  While the production of the vaccines did not reportedly require any new abortions, Plaintiff objects to receiving the COVID-19 vaccines on the basis that, even assuming the vaccines do confer a meaningful health benefit, that benefit is one from ill-gotten gains.

57.  Plaintiff believes any benefit the COVID-19 vaccines may confer flows from the unjust exploitation of unborn human life.

**Defendant Cannot Show that Allowing Unvaccinated Employees to Stay Would Cause an Undue Hardship**

58.  Where (1) the COVID-19 vaccine is not effective at reducing infection; (2) the COVID-19 vaccine is not effective at preventing transmission, (3) natural immunity to SARS-

---

[3] WREG, *State: Fetal cell lines, not fetal tissue, were used to make Johnson & Johnson vaccin*e (March 5, 2021) available at https://www.wreg.com/news/state-fetal-cell-lines-not-fetal-tissue-was-used-to-make-johnson-johnson-vaccine/ (last visited Sept. 27, 2021).
[4] La. Dept of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (emphasis added) (last visited Oct. 24, 2022).
[5] *See*, Nebraska Medicine, *You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells?*, https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells, (last visited on Aug. 26, 2021).
[6] *COVID-19 Vaccine and Fetal Cell Lines.*
[7] *Ibid.*

COMPLAINT - 9

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

CoV-2 is preferential to vaccine-induced immunity, and (4) the vaccine poses abundant health risk, Plaintiff not only poses no risk to fellow Meta employees by remaining unvaccinated but is himself put at risk from Defendant's mandate.

***The COVID-19 Vaccine Does Not Prevent Infection or Transmission***

59. The COVID-19 vaccine has been ineffective at preventing the transmission and infection of SARS-CoV-2.

60. Indeed, the vaccine has demonstrated *negative effectiveness* and could even increase the risk of infection.[8]

61. Israeli data found that those who had received the BioNTech vaccine were 6.72 times more likely to suffer a subsequent infection than those with natural immunity.[9] Israeli data also indicates the protection BioNTech grants against infection is short-lived compared to natural immunity and degrades significantly faster.

62. A paper published in *Eurosurveillance*, a journal published by the European Centers for Disease Control, documents a significant outbreak of COVID-19 among fully vaccinated patients and staff at a hospital in Tel Aviv.[10] At the time of the outbreak, investigators determined 238 out of 248 of exposed patients and staff had been fully vaccinated with Pfizer's mRNA vaccine. Ultimately, 39 out of the 238 exposed vaccinated people (16 percent) were infected, along with 3 out of 10 unvaccinated

---

[8] Altarawneh, H., Chemaitelli, H., et al. *Effects of Previous Infection and Vaccination on Symptomatic Omicron Infections,* N. Engl. J. Med. 2022; July 7, 2022, DOI: 10.1056/NEJMoa2203965; Florentino, P., Millington, T., *Vaccine effectiveness of two-dose BNT162b2 against symptomatic and severe COVID-19 among adolescents in Brazil and Scotland over time: a test-negative case-control study,* The Lancet, August 8, 2022, DOI: https://doi.org/10.1016/S1473-3099(22)00451-0; *see* Nass, Meryl, COVID-19 Vaccines Don't Prevent Transmission, Severe Illness or Deaths, Data Show, *The Defender,* April 4, 2022, available at https://childrenshealthdefense.org/defender/covid-vaccines-dont-prevent-transmission-severe-illness-deaths-data/.
[9] David Rosenberg, *Natural Infection vs Vaccination: Which Gives More Protection?* Israel National News, (Jul. 13, 2021), available at https://www.israelnationalnews.com/ News/News.aspx/309762 (last visited Aug. 26, 2021).
[10] Pinina Shitrit, et. al., *Nosocomial outbreak caused by the SARS-CoV-2 Delta variant in a highly vaccinated population, Israel, July 2021,* (July 2021) available at https://www.eurosurveillance.org/content/10.2807/1560-7917.ES.2021.26.39.2100822#html_fulltext (last visited on Oct. 3, 2021).

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

people – a difference that doesn't reach statistical significance because the unvaccinated group is too small. Of the infected, 23 were patients and 19 staff.[11] The staff all recovered quickly, but five patients died and another nine had severe or critical cases. *All were vaccinated*. On the other hand, the two unvaccinated infected patients both had only *mild* cases of COVID-19.

63. A senior Pfizer executive has admitted that Pfizer did not even know whether its mRNA COVID-19 shot stopped transmission before Pfizer began administering it to the public.[12]

64. It should, therefore, come as no surprise that in their real-world application the vaccines have not shown that they are effective at stopping infection or preventing vaccinated persons from spreading the virus.

### Natural Immunity is Durable, Lasting, and Superior to Vaccination

65. Natural immunity is robust, durable, and complete against all variations of SARS-CoV-2.

66. There is strong evidence that persons who have been infected with SARS-CoV-2 and recovered are protected from future reinfection for over a year, and potentially have lifelong immunity – unlike vaccinated persons.[13] However, Defendant wholesale disregards the relevance of natural immunity entirely.

---

[11] *Nosocomial outbreak caused by the SARS-CoV-2 Delta variant in a highly vaccinated population, Israel, July 2021*.

[12] Pfizer did not know whether Covid vaccine stopped transmission before rollout, executive admits, October 13, 2022, *news.com.au*, available at
https://www.news.com.au/technology/science/human-body/pfizer-did-not-know-whether-covid-vaccine-stopped-transmission-before-rollout-executive-admits/news-story/f307f28f794e173ac017a62784fec414

[13] *See*, Yair Goldberg; Micha Mandel, et al., *Protection of previous SARS-CoV-2 infection is similar to that of BNT162b2 vaccine protection: A three month nationwide experience from Israel*, medRxiv (April 20, 2021)

COMPLAINT - 11

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

67. A bevy of epidemiological studies demonstrate that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the most effective vaccines currently available.[14]

68. Israeli researchers conducting a massive group study found exceedingly low reinfection rates for people previously infected with COVID-19.[15] More interestingly, the Israeli scientists found people who receive both doses of the EUA-approved Pfizer shot were up to *13 times more likely to contract the virus than those who were previously infected with the virus* and that "natural immunity confers longer lasting and stronger protection against infection."[16]

69. Given the mounting body of compelling research, it is medically unnecessary for persons who have recovered from COVID-19 and present evidence of natural immunity, to undergo vaccination for SARS-CoV-2. Indeed, it is beneficial for most individuals to be naturally introduced to the virus.

70. Forcing Plaintiff, who may have had natural immunity, to receive the COVID-19 vaccine would not only offer them or those around them little benefit, but it would also subject him to an elevated risk of adverse side effects, including death, as demonstrated below.

---

available at https://www.medrxiv.org/content/10.1101/2021.04.20.21255670v1 (last visited on Aug. 26, 2021); *See*, also Jackson S. Turner; Wooseob Kim, et al., *SARS-CoV-2 infection induces long-lived bone marrow plasma cells in humans*, Nature 595 (pp. 421-425) (May 24, 2021).

[14] *See, e.g.* N. Kojima; A. Roshani, et al., *Incidence of Severe Acute Respiratory Syndrome Coronavirus-2 Infection among previously infected or vaccinated employees*, medRxiv (July 3, 2021) available at https://www.medrxiv.org/content/10.1101/2021.07.03.21259976v2 (last visited on Aug. 26, 2021).

[15] *See*, Svian Gazit, et. al., *Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections*, medRxiv, https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.full.pdf (last visited on Aug. 26, 2021).

[16] *Ibid.*

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

*Vaccination Poses Substantial Health Risks*

71. All three of the available COVID-19 vaccines available in the United States are based entirely on a limited set of clinical trials executed over a matter of mere months before vaccines were administered to the public. Recent information has revealed that these trials were riddled with massive fraud, falsified data, and negligent and intentional error.

72. There has never been a successful coronavirus vaccine in history.

73. Governmental authorities revised their definition of the word "vaccine" itself in order to continue to label these experimental drugs with novel ingredients because they fail to meet the test of traditionally defined vaccines, which actually inoculated against infection and prevented transmission, neither of which COVID-19 vaccines can do.

74. Recent reporting data presents an alarming picture: as of the time of this filing, there have been 35,323 deaths reported to VAERS from COVID-19 vaccines and 1,719,086 total adverse events.[17]

75. The input of event reports to VAERS since the COVID vaccines were rolled out is *far greater than all cumulative adverse event reports to VAERS for the prior 30 years*: an alarming statistic.

76. This data is likely staggeringly underestimated, as past attempts to investigate VAERS reporting rate have suggested that between 1 percent and 13 percent of actual adverse effects get reported; however, because CDC changed VAERS reporting recently to

---

[17] https://wonder.cdc.gov/controller/datarequest/D8;jsessionid=0E84A6725F6EA0434A7910838E0C; Josh Guetzhow, Safety Signals for COVID Vaccines Are Loud and Clear. Why Is Nobody Listening?, THE DEFENDER, (Sept. 29, 2021) available at https://childrenshealthdefense.org/defender/safety-signals-covid-vaccines-full-transparency-cdc-fda/ (last visited July 27, 2023).

COMPLAINT - 13

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

include additional data, it is not possible to estimate the degree of underreporting based on past attempts to do so.[18] The CDC has failed to account for this underreporting.

77. Recent estimates suggest that the rate of injury for vaccinated individuals is 5.1 percent.[19]

78. COVID-19 vaccines have been known to cause a myriad of adverse effects: myocarditis, pericarditis, Guillain-Barre syndrome, antibody-dependent enhancement, fertility concerns, menstrual health issues, and many other conditions.

79. Especially alarmingly high rates of myocarditis and pericarditis following vaccination have been witnessed in all age groups, but particularly in young males.[20] Stories of young athletes collapsing on the field due to heart problems have plagued the media. Because of underreporting, the risk of myocarditis following COVID-19 vaccination may be more serious than reported.

80. We now know that vaccine-induced spike proteins circulate throughout the body and accumulate in large concentrations in organs and tissues, including the spleen, bone marrow, liver, adrenal glands, and especially the ovaries.[21] Since there exists no way to turn off spike production, the actual dose of spike protein may vary by orders of

---

[18] Varricchio F, Iskander J, Destefano F, Ball R, Pless R, Braun MM, Chen RT. Understanding vaccine safety information from the Vaccine Adverse Event Reporting System. Pediatr Infect Dis J. 2004 Apr;23(4):287-94. doi: 10.1097/00006454-200404000-00002. PMID: 15071280.

[19] *Horowitz: German insurance claims hint at millions of unreported COVID vaccine injuries*, August 15, 2022, available at https://www.conservativereview.com/horowitz-german-insurance-claims-vaccine-injury-2657863726.html.

[20] Krug A, Stevenson J, Høeg TB. BNT162b2 Vaccine-Associated Myo/Pericarditis in Adolescents: A Stratified Risk-Benefit Analysis. Eur J Clin Invest. 2022 May;52(5):e13759. doi: 10.1111/eci.13759. Epub 2022 Mar 4. PMID: 35156705; PMCID: PMC9111575; Gill J, Tashjian R, Autopsy Histopathologic Cardiac Findings in 2 Adolescents Following the Second COVID-19 Vaccine Dose. Arch Pathol Lab Med (2022); 146(8): 925-929. Doi: https://doi.org/10.5858/arpa.2021-0435-SA; Watanabe S, Hama R, SARS-CoV-2 vaccine and increased myocarditis mortality risk: a population based comparative study in Japan. Oct 18 2022, doi: https://doi.org/10.1101/2022.10.13.22281036.

[21] Megan Redshaw, *'We Made a Big Mistake' – COVID Vaccine Spike Protein Travels From Injection Site, Can Cause Organ Damage,* The Defender (June 3, 2021), https://childrenshealthdefense.org/defender/covid-vaccine-spike-protein-travels-from-injection-site-organ-damage/.

COMPLAINT - 14

magnitude from person to person. Strong evidence links spike protein *in vivo* to blood clots, thrombocytopenia, hemorrhages, heart attacks and strokes.

81. The potential adverse effects Plaintiff faces in being coerced to receive the COVID-19 vaccines pursuant to Defendant's mandate are not theoretical, hypothetical or academic—they are very real and have real victims. Given the alarming reports of adverse side-effects associated with the COVID-19 vaccines, subjecting Plaintiff to vaccination exposes him to a variety of health risks ranging from headaches and blood clots to death.

82. The empirical evidence and recent studies have provided definitive proof that these vaccines cannot boast safety and effectiveness. In no such circumstances should these experimental medical products be mandated in any setting.

**Employers Who Have Failed to Provide Reasonable Accommodations for Vaccine Mandates Have Been Held Liable**

83. The discouragement or denial of religious accommodations from employers' mandatory vaccine policies has been found unlawful, even when those mandates were proscribed by hospitals. Indeed, numerous employers have been sued and lost over forced vaccines. *See, e.g. EEOC v. Mission Hosp. Inc*., No. 1:16-cv-118-MOC-DL, 2017 WL 3392783 (W.D.N.C. Aug. 2017) [resulting in permanent injunction against the employer from improperly denying religious exemptions from mandated vaccines and requiring employer to pay $89,000 in damages]; *United States v. Ozaukee County*, No 18-cv-343-pp (E.D. Wis. 2018) [resulting in a permanent injunction against the employer for failure to grant religious exemptions from compulsory vaccines and order payment of damages to employee].

COMPLAINT - 15

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

84. Likewise, in *EEOC v. Saint Vincent Health Center*, Civil Action No. 1:16-cv-234 (2016), the employer agreed to pay $300,000 to a class of six aggrieved former employees and provided substantial injunctive relief to settle a religious discrimination lawsuit based upon a failure to grant a religious exemption as part of a mandatory seasonal flu vaccination requirement for its employees.

85. Moreover, in *EEOC v. Memorial Healthcare*, Civil Action No. 2:18-cv-10523 (2018), the defendant employer paid $74,418 ($34,418 in back pay, $20,000 in compensatory damages and $20,000 in punitive damages) for refusing to hire a medical transcriptionist because of her religious beliefs against receiving flu shots and refusing to accommodate those beliefs.

86. In fact, as recently as 2018, the U.S. Equal Employment Opportunity Commission sued Nashville-based Saint Thomas Health, after the employer failed to make a reasonable religious accommodation for the flu vaccine. *EEOC v. Saint Thomas Health*, Civil Action No. 3:18-cv-00978 (M.D. Tenn. 2018).

87. The *Saint Thomas Health* case resulted in a consent decree enjoining the employer from failing to provide religious accommodations to an employee's sincerely held religious beliefs unless such requests created an undue hardship. The decree also awarded the injured employee $75,000 in damages and directed the employer to issue the employee an apology letter.

## FIRST CAUSE OF ACTION
### Religious Discrimination
**[Violation of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq.]**

88. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-87 as if fully set forth herein.

COMPLAINT - 16

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

89. Title VII prohibits "discriminat[ion] against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).[22]

90. Title VII imposes upon an employer the duty to make reasonable accommodations for the religious observances short of incurring an undue hardship.

91. Mr. Robinson holds sincere religious beliefs that prevent him from receiving a COVID-19 vaccine and complying Meta's vaccination policy.

92. Mr. Robinson requested a religious exemption and accommodation from Meta's COVID-19 vaccine mandate and presented multiple reasonable accommodations as an alternative to vaccination. Meta was undoubtedly put on notice of Mr. Robinson's religious objections.

93. Meta denied all accommodations, failed to engage in the interactive process with Mr. Robinsons to resolve the conflict between his sincere religious objections and Meta's policy, and failed to perform an individualized assessment of Mr. Robinson's situation.

94. Meta subsequently took adverse employment action against Mr. Robinson by terminating his employment for failure to undergo a medical procedure.

95. Furthermore, Meta enforced disparate policies for similarly situated employees. Meta's Data Center facilities do not require US employees to be vaccinated to enter. Mr. Robinson worked closely with a team of employees who held roles that nearly identical

---

[22] As the Supreme Court has recognized, employees' "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit [legal] protection." *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 714 (1981); *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Additionally, though membership in or adherence to the tenets of an organized religion is plainly sufficient to provide protection for an individual's sincerely held religious beliefs, it is not a necessary precondition. *See Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 834 (1989)

COMPLAINT - 17

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

duties as Mr. Robinson's. However, because those individuals were based out of Data Center locations, they were not required to be fully vaccinated. Rather than transfer Mr. Robinson to another similar role that did not require vaccination, Meta instead opted to terminate his employment altogether.

96. By denying reasonable accommodation and executing punitive measures against him for refrain from obtaining a COVID-19 vaccine on religious grounds, Meta discriminated against Mr. Robinson due to his religious beliefs.

97. Meta's failure to provide religious accommodation has injured and will continue to injure Mr. Robinson by discriminatorily denying him employment and income.

98. On these facts, Mr. Robinson establishes a prima facie case that shows Meta failed to make any reasonable accommodation and violated his Title VII rights.

99. Furthermore, Meta cannot demonstrate that accommodating Mr. Robinson, through his suggested accommodations or otherwise, would impose an undue hardship.

100.     As such, Meta has violated Mr. Robinson's rights under Title VII by discriminating against him on the basis of religion and failing to provide a reasonable accommodation.

## SECOND CAUSE OF ACTION
### Retaliation
### [Violation of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e-3]

101.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-87 as if fully set forth herein.

102.     Title VII also prohibits retaliation against an employee for engaging in protected activity and opposing an unlawful practice that is prohibited by Title VII. 42 U.S.C. § 2000e-3(a).

COMPLAINT - 18

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

103.    Mr. Robinson engaged in protected employee activity.

104.    Mr. Robinson sought a sincerely held religious exemption, putting Defendant on notice of his objections to the COVID-19 vaccine mandate. Defendant was aware of his concerns through continuous communications with Plaintiff.

105.    Mr. Robinson, seeking to exercise his constitutionally protected religious freedoms, was and is injured by Meta as a result.

106.    Plaintiff suffered an adverse action by Meta via termination directly connected to Mr. Robinson's protected activity.

107.    There is a direct connection between the employee's protected activity and Meta's discriminatory and retaliatory treatment as Mr. Robinson was terminated as a direct result of seeking his religious exemptions and accommodations.

### THIRD CAUSE OF ACTION
**Religious Discrimination**
**[Violation of the Washington Law Against Discrimination; RCW Chapter 49.60]**

108.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-87 as if fully set forth herein.

109.    The Washington Law Against Discrimination ("WLAD"), RCW Chapter 49.60 further prohibits discrimination against religion.

110.    Meta qualifies as an employer under the WLAD pursuant to RCA 49.60.040(11).

111.    RCW 49.60.030 states:

Freedom from discrimination - Declaration of civil rights.

(1) The right to be free from discrimination because of . . . creed . . . is recognized as and declared to be a civil right.

COMPLAINT - 19

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

112.     RCW 49.60.030 codifies the "right to obtain and hold employment without discrimination."

113.     Here, Meta has failed to accommodate Mr. Robinson's religious practices.

114.     Mr. Robinson has a bona fide religious belief that conflicted with Meta's mandatory vaccination policy.

115.     Mr. Robinson notified Meta of his religious beliefs by filing an exemption and accommodation request and engaging in continuous communication with Meta representatives.

116.     Meta responded by expressly announcing its intent to reduce the terms and benefits of his employment.

117.     Meta refused to continue Mr. Robinson's reasonable work from home accommodations, which he had been implementing for two years prior, and refused any other reasonable accommodation proposed by Mr. Robinson. Instead, Meta chose to terminate his employment.

118.     In doing so, Meta has discriminated against Mr. Robinson based on his religious beliefs in violation of Washington civil rights law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully pray for the following relief:

a. A finding that Plaintiff has a fundamental right to his bodily autonomy, and to make health decisions in accordance with his beliefs and conscience;

b. A finding that Defendant discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination;

c. Enjoin Defendant from taking any further adverse employment action against Plaintiff;

COMPLAINT - 20

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301

d.  Enjoin Defendant from taking any similar discriminatory adverse employment action against any other Meta employee;

e.  An order that Plaintiff be compensated, to the extent allowable under Washington state and Federal law, for his monetary damages;

f.  An order that Defendant pays Plaintiff's costs associated with bringing this lawsuit, including his reasonable attorneys' fees and costs; and

g.  A grant of any such further relief as the Court deems necessary and proper in the public interest.


Dated: July 28, 2023

Respectfully submitted,

*Karen Louise Osborne*

Karen Louise Osborne , WSBA No. 51433
karen@smfjb.org
Simon Peter Serrano, WSBA No. 54769
pete@silentmajorityfoundation.org
SILENT MAJORITY FOUNDATION
5238 Outlet Drive
Pasco, WA 99301
Telephone: 530-906-9666


Robert E. Barnes, Esq.
*Subject to Admission Pro Hac Vice*
Lexis Anderson, Esq.
*Subject to Admission Pro Hac Vice*
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, California 90017
Telephone: (310) 510-6211
Facsimile: (310) 510-6225
Email: robertbarnes@barneslawllp.com
Email: lexisanderson@barneslawllp.com

COMPLAINT - 21

Silent Majority Foundation
5238 Outlet Dr.
Pasco, WA 99301